# In The
# United States Court of Appeals
## For The Ninth Circuit

**RYAN CROWNHOLM; and CROWN CAPITAL ADVENTURES, INC.,**
**d/b/a MYSITEPLAN.COM,**

*Plaintiffs-Appellants,*

v.

**RICHARD B. MOORE,** in his official capacity as Executive Officer of the
California Board for Professional Engineers, Land Surveyors, and Geologists, et
al.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
NO. 2:22-CV-01720-DAD-CKD
HON. DALE A. DROZD

## REPLY BRIEF OF APPELLANTS

Michael Greenberg
INSTITUTE FOR JUSTICE
901 N. Glebe Road,
Suite 900
Arlington, VA 22203
(703) 682-9320
mgreenberg@ij.org

Paul V. Avelar
INSTITUTE FOR JUSTICE
398 S. Mills Ave.,
Suite 301
Tempe, AZ 85281
(480) 557-8300
pavelar@ij.org

S. Michael Kernan
THE KERNAN LAW FIRM, APC
9663 Santa Monica Blvd.,
Suite 450
Beverly Hills, CA 90210
(310) 490-9777
mkernan@kernanlaw.net

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

REPLY ........................................................................................... 1

    I.    *Younger* abstention does not apply. ....................................... 3

    II.   The Board ignores that under Rule 12(b)(6), the facts of the
          Complaint control. ................................................................. 7

    III.  Plaintiffs have stated a free-speech claim that is likely to succeed. ... 10

          A.    *Holder* controls even when speech is restricted by an
                 occupational licensing requirement; this is not an incidental
                 regulation of speech. ...................................................... 11

          B.    The Board's restriction isn't narrowly tailored ........................ 17

    IV.  Plaintiffs have stated an overbreadth and/or a vagueness claim that is
          likely to succeed. .................................................................. 21

          A.    Overbreadth .................................................................. 21

          B.    Vagueness ................................................................... 26

    V.    Plaintiffs have stated a due process claim and/or an equal protection
          claim. ................................................................................. 28

          A.    Plaintiffs have stated a due process claim. ............................ 29

          B.    Plaintiffs have stated an equal protection claim. ..................... 32

    VI.  The equities favor Plaintiffs. ................................................... 35

CONCLUSION ............................................................................. 37

CERTIFICATE OF COMPLIANCE ................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*303 Creative LLC v. Elenis*,
143 S. Ct. 2298 (2023) ....................................................................10

*Alleghany Corp. v. Pomeroy*,
898 F.2d 1314 (8th Cir. 1990) .............................................7

*American Beverage Ass'n v. City & County of San Francisco*,
916 F.3d 749 (9th Cir. 2019) (en banc) .............................36

*American Soc'y of Journalists & Authors, Inc. v. Bonta*,
15 F.4th 954 (9th Cir. 2021) .......................................13, 14

*AmerisourceBergen Corp. v. Roden*,
495 F.3d 1143 (9th Cir. 2007) .......................................3, 4

*Berner v. Delahanty*,
129 F.3d 20 (1st Cir. 1997) .................................................16

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*,
482 U.S. 569 (1987) ............................................................23

*Bullfrog Films, Inc. v. Wick*,
847 F.2d 502 (9th Cir. 1988) ..............................................27

*City of Chicago v. Morales*,
527 U.S. 41 (1999) ..............................................................25

*City of Houston v. Hill*,
482 U.S. 451 (1987) ......................................................21, 25

*Conant v. Walters*,
309 F.3d 629 (9th Cir. 2002) ..............................................15

*Cornwell v. Hamilton*,
  80 F. Supp. 2d 1101 (S.D. Cal. 1999) .................................................. 30

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ............................................................ 35

*Duke v. Gastelo*,
  64 F.4th 1088 (9th Cir. 2023) ..................................................... 3, 6, 7

*Edenfield v. Fane*,
  507 U.S. 761 (1993) ....................................................................... 19

*Foti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998) ............................................................ 27

*Fowler Packing Co. v. Lanier*,
  844 F.3d 809 (9th Cir. 2016) ............................................................ 33

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ....................................................................... 27

*Hernandez v. City of Phoenix*,
  43 F.4th 966 (9th Cir. 2022) ............................................................ 25

*Hill v. Kirkwood*,
  326 P.2d 599 (Cal. App. 1958) .......................................................... 23

*Hines v. Quillivan*,
  982 F.3d 266 (5th Cir. 2020) ............................................................ 15

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) .......................................................... 11, 12, 13, 14

*Hoye v. City of Oakland*,
  653 F.3d 835 (9th Cir. 2011) ............................................................. 4

*Huffman v. Pursue, Ltd.*,
  420 U.S. 592 (1975) ...................................................................... 4, 5

iv

*IMDb.com Inc. v. Becerra,*
 962 F.3d 1111 (9th Cir. 2020) ..........................................................10

*Italian Colors Rest. v. Beccera,*
 878 F.3d 1165 (9th Cir. 2018) ..........................................................18

*Järlström v. Aldridge,*
 366 F. Supp. 3d 1205 (D. Or. 2018) ..................................................15

*Juidice v. Vail,*
 430 U.S. 327 (1977)..............................................................................6

*Klein v. City of San Clemente,*
 584 F.3d 1196 (9th Cir. 2009) ..........................................................36

*Kuba v. 1-A Agric. Ass'n,*
 387 F.3d 850 (9th Cir. 2004) ............................................................19

*Majors v. Engelbrecht,*
 149 F.3d 709 (7th Cir. 1998) ..............................................................6

*Maymó-Meléndez v. Álvarez-Ramírez,*
 364 F.3d 27 (1st Cir. 2004).................................................................6

*McCormack v. Herzog,*
 788 F.3d 1017 (9th Cir. 2015) ..........................................................27

*McCullen v. Coakley,*
 573 U.S. 464 (2014)............................................................................20

*Merrifield v. Lockyer,*
 547 F.3d 978 (9th Cir. 2008) ......................................................29, 33

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
 457 U.S. 423 (1983)..............................................................................6

*Mobilize the Message, LLC v. Bonta,*
 50 F.4th 928 (9th Cir. 2022) ......................................................13, 14

*Nat'l Inst. of Family & Life Advocs. v. Becerra*,
138 S. Ct. 2361 (2018) ...............................................................11, 15, 16

*O'Neill v. City of Philadelphia*,
32 F.3d 785 (3d Cir. 1994) ........................................................7

*Olson v. California*,
52 F.4th 1206 (9th Cir. 2023) ................................................33, 34

*Pacific Coast Horseshoeing Sch., Inc. v. Kirchmeyer*,
961 F.3d 1062 (9th Cir. 2020) ............................................ 13-14, 15

*Potrero Hills Landfill, Inc. v. County of Solano*,
657 F.3d 876 (9th Cir. 2011) ..................................................5, 6, 7

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
754 F.3d 754 (9th Cir. 2014) ....................................................3, 6

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)..................................................................17

*Reno v. American Civ. Liberties Union*,
521 U.S. 844 (1997)..................................................................24

*Retail Prop. Tr. v. United Brotherhood of Carpenters and Joiners of Am.*,
768 F.3d 938 (9th Cir. 2014) .....................................................7

*St. Joseph Abbey v. Castille*,
712 F.3d 215 (5th Cir. 2013) .................................................29, 31

*San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*,
546 F.3d 1087 (9th Cir. 2008) ..................................................6

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)..........................................................10, 13, 14

*United States v. Reese*,
92 U.S. 214 (1876)....................................................................25

*United States v. Stevens*,
    559 U.S. 460 (2010).........................................................21, 22, 24, 25

*Upsolve, Inc. v. James*,
    604 F. Supp.3d 97 (S.D.N.Y. 2022) ..................................16

*Western Watersheds Project v. Michael*,
    869 F.3d 1189 (10th Cir. 2017) ........................................10

*Wiener v. County of San Diego*,
    23 F.3d 263 (9th Cir. 1994) .............................................4, 7

*Wooley v. Maynard*,
    430 U.S. 705 (1977)....................................................4, 5, 6, 7

*World Famous Drinking Emporium, Inc. v. City of Tempe*,
    820 F.2d 1079 (9th Cir. 1987) ...........................................7

## CONSTITUTIONAL PROVISIONS

Const. amend. I ..............................................................*passim*

## CODES AND RULES

Cal. Building Code ch. 1, div. 2, § 107.2.6 (2022)........................8, 19, 30

Cal. Bus. & Prof. Code § 8726(a)...................................................*passim*

Cal. Bus. & Prof. Code § 8727 .......................................................22, 23

Cal. Bus. & Prof. Code § 8750 ..........................................................15

Cal. Bus. & Prof. Code § 8761 ..........................................................15

Cal. Code Regs. tit. 16, § 472.3 .........................................................4

Fed. R. Civ. P. 12(b)(6)..................................................................*passim*

Fed. R. Evid. 602 .............................................................................35

# REPLY

The Board and its amicus fail to grapple with the fact that non-surveyors across California create site plan drawings substantively identical to Plaintiffs' site plan drawings. Indeed, these non-surveyors—who include contractors and homeowners—often do so at the behest and instruction of their local building departments to submit for permits. A site plan, by definition, is a drawing that provides a visual image of property by depicting property boundaries, structures, and measurements. Because of their limited uses, site plans do not implicate the "integrity of property lines." California building departments do not require all site plans submitted to them to be prepared by surveyors. Plaintiff Ryan Crownholm— a former California contractor who spent years drawing site plans to obtain permits—created MySitePlan.com to provide a service to contractors, homeowners, and others by providing these same site plans for a variety of non-authoritative uses.

As explained below, the Board's Answering Brief does not undermine Plaintiffs' showing that the district court erred in both dismissing their Complaint and denying a preliminary injunction.

First, the Board's bid for this Court to adopt a previously rejected, expanded version of *Younger* abstention should be denied.

Second, the Board's Answering brief largely ignores, or tries to draw impermissible inferences contrary to, the well-pleaded facts.

Third, Plaintiffs' using, creating, and disseminating information in the form of site plan drawings is speech within the meaning of the First Amendment. The Board all but concedes this. But the Board insists it need not meet First Amendment scrutiny because the statute it uses to regulate Plaintiffs' speech is an occupational-licensing statute. Binding Supreme Court precedent precludes that argument. And because the Board hardly bothers to meet its narrow-tailoring burden, Plaintiffs have stated a free-speech claim that is likely to succeed on the merits.

Fourth, the Board continues to offer haphazard interpretations—unmoored from the text—of what its land-surveying definition does and does not regulate. In so doing, it spotlights both the statute's overbreadth and vagueness. Again, the Board does not grapple with the fact that it is requiring a license for Plaintiffs' drawings, despite those drawings not implicating the Board's property-integrity interests, while thousands of other non-surveyors across California create substantively identical drawings and have done so for years without objection. The Board still does not explain if these other non-surveyors' substantively identical site plans violate the law, and if not, why not.

Fourth, even if the First Amendment does not apply, the facts support plausible due process and equal protection claims, too.

Fifth, the balance of equities favors Plaintiffs' motion for preliminary injunction.

This Court should REVERSE the dismissal, ORDER the entry of a preliminary injunction, and REMAND for litigation on the merits.

## I.    *Younger* abstention does not apply.

The Board maintains that the federal courts should abstain under *Younger*, even though its administrative proceeding concluded before Plaintiffs filed this federal action. The Board's argument has been rejected by this Court and the Supreme Court.

*Younger* is rooted in the idea that federal courts should not "enjoin pending state [enforcement] proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014). It is an "extraordinary and narrow exception to the general rule that federal courts" may not "decline the exercise of jurisdiction which is given." *Duke v. Gastelo*, 64 F.4th 1088, 1093 (9th Cir. 2023) (citations omitted). Accordingly, abstention is appropriate only if all the elements are "strictly satisfied." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007).

The Board fails the very first element because there were no ongoing state proceedings "at the time the federal action was filed." *Duke*, 64 F.4th at 1093 (citations omitted); Excerpts of Record ("ER") 045.[1] As the Board concedes,

---

[1] As noted in Plaintiffs' motion for expedited consideration, the Board recently began new enforcement against Plaintiffs. This is not relevant to the *Younger*

3

Plaintiffs withdrew their appeal of the Board's citation and paid their fine before filing this suit. ER-075, ER-106; Answer 62. This made the Board's citation final, Cal. Code Regs. tit. 16 § 472.3(f), though it did "not constitute an admission of the violation charged," *id.* § 472.3(e). A proceeding that is final is not "ongoing." *AmerisourceBergen*, 495 F.3d at 1149. Plaintiffs do not seek to enjoin that finalized proceeding or any other; they seek a "prospective injunction against prosecutions under an allegedly unconstitutional" statute, meaning "*Younger* abstention does not apply." *Wiener v. County of San Diego*, 23 F.3d 263, 267 (9th Cir. 1994).

Undeterred, the Board claims it holds the "better view" that "ongoing" does not actually mean *ongoing*. Answer 63. Rather, the Board says, proceedings are "ongoing" anytime there "*were*" state proceedings "for which judicial review *would have* been available." *Id*. (emphasis added).

The Supreme Court rejected this argument in *Wooley v. Maynard*, 430 U.S. 705 (1977). Maynard was successfully prosecuted three times for violating a state statute, and he never appealed those convictions. *Id*. at 708-09. Instead, he and his wife brought a federal constitutional challenge to the statute. *Id*. at 709. Based on *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (cited at Answer 65), the state argued *Younger* barred that challenge because "Maynard failed to seek review of his

---

analysis here because this case has already proceeded well "beyond an embryonic stage." *Hoye v. City of Oakland*, 653 F.3d 835, 844 (9th Cir. 2011).

4

criminal convictions." *Maynard*, 430 U.S. at 710. The Court disagreed, because

unlike in *Huffman*:

> th[is] suit is in no way "designed to annul the results of a state trial" since the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate appellees' constitutional rights. Maynard has already sustained convictions and has served a sentence of imprisonment for his prior offenses. He does not seek to have his record expunged, or to annul any collateral effects those convictions may have, e.g., upon his driving privileges. The Maynards seek only to be free from prosecutions for future violations of the same statutes. *Younger* does not bar federal jurisdiction.

*Id*. at 711 (footnote omitted). This Court followed *Maynard* in *Potrero Hills*

*Landfill, Inc. v. County of Solano*, 657 F.3d 876, 885 (9th Cir. 2011) ("Where a

federal plaintiff seeks relief not from past state actions but merely from prospective

enforcement of state law, federal court adjudication would not interfere with the

state's basic executive functions in a way *Younger* disapproves.").

   *Maynard* and *Potrero Hills* control here. Plaintiffs have already sustained and

paid their penalty. ER-075, ER-106. They seek only prospective relief against the

application of the challenged statutes. ER-121. They don't seek to have their records

expunged or their fine refunded, or to undo any collateral effects of the Board's

order. *Id.* Like Maynard, they seek "only to be free from prosecutions for future

violations of the same statutes." 430 U.S. at 711. Accordingly, "*Younger* does not

bar federal jurisdiction." *Id.*

The Board does not distinguish, or even mention, *Maynard* or *Potrero Hills*. And none of the authorities it cites, Answer 63-66, contradict those cases. Rather, every case it cites was a federal suit which, unlike this case, was filed while state proceedings were still pending, sought to overturn the state proceeding rather than prospective relief, or both:

- *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 428-29 (1983) (state proceedings still pending);

- *Juidice v. Vail*, 430 U.S. 327, 333 (1977) (state proceedings still pending);[2]

- *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091, 1093-94 (9th Cir. 2008) (both), *abrogated on other grounds as recognized in ReadyLink*, 754 F.3d at 759;

- *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 30-34 (1st Cir. 2004) (both);

- *Majors v. Engelbrecht*, 149 F.3d 709, 710-11 (7th Cir. 1998) (both);

---

[2] The Board misrepresents *Juidice*. It says *Juidice* supports its theory that state proceedings are "ongoing" for *Younger* purposes—even when they are concluded—so long as the federal plaintiff *could have* raised their constitutional claims in the since-concluded state proceedings. Answer 65 n.19. But this Court recently confirmed *Juidice* does not say that. *Duke*, 64 F.4th at 1097 & n.5. Instead, in *Juidice*, *Younger* barred only the claims of plaintiffs who still had "*prospective* opportunity to raise their constitutional claims" in state proceedings when they filed their federal action. *Id.* (emphasis added).

- *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789-90 (3d Cir. 1994) (federal suit to overturn state proceedings);

- *Alleghany Corp. v. Pomeroy*, 898 F.2d 1314, 1317 (8th Cir. 1990) (federal suit to overturn state proceedings);

- *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1081-82 (9th Cir. 1987) (state proceedings still pending).

The Board's argument reduces to this: If plaintiffs have been prosecuted once before, *Younger* bars them from ever bringing a prospective claim in federal court to enjoin future, similar prosecutions. The Supreme Court (in *Maynard*) and this Court (in *Potrero Hills*, *Duke*, and *Wiener*) have rejected that argument. *Younger* does not apply when state proceedings have concluded and plaintiffs seek prospective relief against enforcement of the underlying statutes.

## II. The Board ignores that under Rule 12(b)(6), the facts of the Complaint control.

The district court dismissed all claims under Rule 12(b)(6). In that posture, courts "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Brotherhood of Carpenters and Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). The Board's brief continues to ignore the facts of the Complaint and attempts to draw every inference in its own favor.

The Board argues this Court should question whether unlicensed Californians in fact draw site plans just like Plaintiffs' site plans with extreme frequency. Answer 43 (characterizing these allegations as "conclusory" and "devoid of specific facts"). But the Complaint gives *pages* of detail about, and multiple examples of, this fact, ER-096-104, including: Plaintiff Ryan Crownholm routinely drew and submitted site plans to local building departments when he was a licensed contractor (¶¶ 27, 42); these departments always accepted Ryan's drawings (¶ 43); staff from various departments taught Ryan how to draw site plans (¶ 44); departments teach the general public how to draw identical site plans (¶¶ 36-38, 45); and "[s]ite plans are routinely submitted to various California county and municipal building permit issuers by non-surveyors, including contractors and homeowners with no surveyor training" and these site plans "are routinely accepted by various California county and municipal building permit issuers," because these issuers "know that these site plans are not prepared by licensed surveyors and accept them because the permit issuers do not need legal surveys for their purposes" (¶¶ 39-41). *See also* ER-066-72, ER-080-83 (record for preliminary injunction). And state law gives the local building departments, not the Board, the power to decide what site plans the local building departments will accept for permits. Cal. Building Code ch. 1, div. 2, § 107.2.6 (2022).

The Board also mischaracterizes Plaintiffs' drawings as misleading, despite Complaint allegations directly to the contrary. The Board repeatedly claims that Plaintiffs market their drawings as "equivalent to a land survey in every way except that they lack a land surveyor's seal." Answer 46; *see id*. 16, 23, 35. But the Complaint states otherwise: Plaintiffs prominently disclaim, "THIS IS NOT A LEGAL SURVEY, NOR IS IT INTENDED TO BE OR REPLACE ONE," ER-101; advertise that they "make no representation regarding the accuracy of [their] sources," ER-102; and while Plaintiffs say (with good reason) that their site plans can be used when a building department does not require a site plan to be prepared by a surveyor, ER-101, they also contrast their non-certified site plans with ones "prepared by … an architect, engineer, or surveyor" because the latter "requires a high level of accuracy" and "a visit to [the customer's] site," ER-102.

Finally, that Plaintiffs' truthfully market their drawings as "suitable for submission to planning and building departments for permitting purposes," does not transform those drawings into "authoritative" ones. Answer 23. Plaintiffs disclaim that their drawings have "dead-on measurements" like a survey. ER-102. And Plaintiffs truthfully say that their drawings can be used for permitting *only* when local building officials do not need the dead-on measurements a licensed person is trained to provide. ER-101-02.

The Board's bid to cast Plaintiffs as fly-by-night actors duping consumers is belied by the Complaint. Plaintiffs simply do for homeowners and contractors the same drawings that local governments teach homeowners and contractors to do themselves. ER-097-104. As discussed below, the Board violates Plaintiffs' rights by prohibiting their drawings.

### III.   Plaintiffs have stated a free-speech claim that is likely to succeed.

The Board does not and cannot contest that the use, "creation[,] and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). And it does not dispute that Plaintiffs want to do exactly that: "create site plans using publicly available geographic information system mapping data, satellite imagery, and client-provided information, and then sell them to customers." Answer 30 (quoting ER-005, ER-042). The activity Plaintiffs want to do is thus "speech within the meaning of the First Amendment." *Sorrell*, 564 U.S. at 570; *accord IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120-21 (9th Cir. 2020); *Western Watersheds Project v. Michael*, 869 F.3d 1189, 1195-96 (10th Cir. 2017). Indeed, the Supreme Court just reaffirmed that information in the form of "drawings" "qualif[ies] for the First Amendment's protections." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2312 (2023) (citations omitted).

The dispute centers on to how to evaluate this free speech claim given that speech is one of the many activities for which California requires a land-surveying license. Binding Supreme Court authority holds that, in *as-applied* challenges like this one, this Court must evaluate whether the statute withstands First Amendment scrutiny as to *these particular Plaintiffs*' speech, regardless of what other activities the statute might cover (Section A). The Board all but concedes that it cannot survive First Amendment scrutiny here (Section B).

### A. *Holder* controls even when speech is restricted by an occupational-licensing requirement; this is not an incidental regulation of speech.

The Board says that "it can require a license to practice land surveying without triggering heightened scrutiny under the First Amendment." Answer 29. By defining Plaintiffs' activity as "the practice of land surveying," *id.* 25, and "requiring a license," the Board argues, it is regulating "professional *conduct*," not speech, *id.* 24 (citing ER-010). According to the Board, this means a speech restriction imposed by an occupational-licensing regime is, *by definition*, an "incidental regulation of speech." *Id.* The Board is wrong.

The Supreme Court rejected that argument in *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374-75 (2018) ("*NIFLA*"). That California has imposed an occupational-license requirement does not affect the First Amendment analysis. *Id.* Otherwise, and as the Board argues for here, states

11

would have "unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *Id*. at 2375. States cannot avoid the distinction between "speech" and "conduct" that would apply in any other case— a distinction "long familiar to the bar"—through an occupational license. *Id*. at 2373 (citations omitted).

This "long familiar" distinction is set out in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). It does not matter if a law "*generally* functions as a regulation of conduct." *Id.* at 27. In an as-applied case, *Holder* requires courts to ask whether the generally applicable law is directed at the particular plaintiff because of the plaintiff's speech or his conduct. *Id*. at 27-28. If *these* plaintiffs trigger the statute's application by speech, then, as applied, the statute is subject to the First Amendment's "more demanding standard." *Id*. at 28 (citation omitted); Opening Br. 25-26.

Like the district court, the Board ignores the *Holder* analysis. Repeatedly, it spotlights what "the Act regulates" generally, not the nature of *these Plaintiffs'* activity. *E.g.*, Answer 24, 31. That is exactly how the government defended the as-applied challenge in *Holder*—and exactly what the Supreme Court unanimously rejected. 561 U.S. at 26-28. Even when a law "may be described as directed at conduct," First Amendment scrutiny is needed when "as applied to plaintiffs the

conduct triggering coverage under the statute consists of communicating a message." *Id.* at 28.[3]

Instead of grappling with *Holder*, the Board gives only a conclusory, one-sentence statement that "the law at issue here … regulates economic activity and poses, at most, an indirect impact on speech." Answer 28. Again, *Sorrell* says otherwise. 564 U.S. at 570 (restriction on sale of speech is a regulation of speech). Neither *American Society of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954 (9th Cir. 2021), nor *Mobilize the Message, LLC v. Bonta*, 50 F.4th 928 (9th Cir. 2022), is to the contrary. In both those cases, people who spoke were regulated, not because of their speech, but because of their "employment relationship" as "employees or independent contractors." *Mobilize the Message*, 50 F.4th at 935; *Society of Journalists*, 15 F.4th at 961-62. The regulation did not "impose content-based burdens on speech," *Society of Journalists*, 15 F.4th at 963, and did not "limit what someone can or cannot communicate," *Mobilize the Message*, 50 F.4th at 935 (quoting *Society of Journalists*). In so ruling, this Court distinguished the case that governs here, *Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer*, 961 F.3d

---

[3] The Board claims the district court "considered" Plaintiffs' "precise activities." Answer 30 (citing ER-005, ER-042). But it cites the district court's recitation of the facts, not its legal analysis. The district court never analyzed whether Plaintiffs' activity is speech or conduct. ER-010, ER-048-52. Regardless, this is a de novo review.

1062, 1069, 1073 (9th Cir. 2020) ("*PCHS*"), because the regulation in *PCHS*—restricting enrollment contracts—*was* directed at the speaker because of the content of his speech. *See Society of Journalists*, 15 F.4th at 962 n.7 (distinguishing *PCHS*). And as *PCHS* explained, laws that generally apply to businesses as such, for example "tax, zoning, and workplace laws," don't necessarily implicate the First Amendment when also applied to speakers, but, under *Holder*, where a law "differentiates between speech or speakers," the First Amendment applies. 961 F.3d 1070-71.

Here, Plaintiffs are directly prohibited from "depict[ing] the location of property lines, fixed works, and the geographical relationship thereto." ER-074. That is a restriction on speech, defined by the content of that speech. Opening Br. 28-33. And unlike in *Mobilize the Message* and *Society of Journalists*, the challenged restriction *does* limit what Plaintiffs "can or cannot communicate": location information. Even if it only applied to the sale of such information—and the statutes are not so limited—this would still be a restriction of speech. *Sorrell*, 564 U.S. at 567 (a restriction on the sale of speech "imposes more than an incidental burden on protected expression"); *PCHS*, 961 F.3d at 1070-72 (same).

The parade of horribles the Board trots out in response falls flat. It says if the courts apply ordinary First Amendment principles to this as-applied challenge "there would be nothing left of state regulation of professions." Answer 31. But

14

"professional speech" is not "exempt from ordinary First Amendment principles." *NIFLA*, 138 S. Ct. at 2375. When occupational licensing laws are applied in a discrete context to restrict speech (as here), First Amendment scrutiny applies. *See, e.g.*, *Hines v. Quillivan*, 982 F.3d 266, 271-72 (5th Cir. 2020) (veterinary-medicine licensing law); *Järlström v. Aldridge*, 366 F. Supp. 3d 1205, 1212-22 (D. Or. 2018) (engineering licensing law).

Instead, the answer to the Board's professed fears is that most activity triggering professional-licensing laws is conduct, not speech. Surgery (doctors) is conduct, for example. *E.g.*, *NIFLA*, 138 S. Ct. at 2373. Constructing buildings (contractors) is conduct.

And, the State remains able to decide whose speech it will officially recognize—whose speech will have legally binding effect. *Conant v. Walters*, 309 F.3d 629, 635 (9th Cir. 2002) (distinguishing restrictions of speech from restrictions on prescription authorization because "a prescription is used as a means for a patient to obtain a controlled substance"). Such restrictions are allowed because they do not restrict speech for its "communicative content" but because of its legal effect. *PCHS*, 961 F.3d at 1070-71 (citation omitted). So, nothing stops California from restricting whom it will *recognize* as a professional land surveyor. *See* Cal. Bus. & Prof. Code §§ 8750, 8761 (restricting who can obtain and use a state-created "stamp or seal"). And nothing stops California from requiring a

license to create drawings that will be incorporated into deeds or otherwise create or alter property rights. *E.g.*, *id*. § 8726(a)(12) ("Determin[ing] the information shown or to be shown within the description of any deed, trust deed, or other title document" requires a license.). So California *can* limit building-permit issuers to accepting certain kinds of documents only from licensees consistent with the First Amendment.[4] But that is not what it has done here. Instead, it is legal for non-surveyors to draw and submit site plans to local building departments. Opening Br. 4-9. And the surveyor license statutes limit who can create and disseminate *any* drawing (for sale or not) depicting certain information *no matter the use*. ER-057 (Plaintiffs cannot draw and "distribute 'site plans for permits' *or other* uses." (emphasis added)).

In this as-applied case, California's surveying laws are restricting *these Plaintiffs'* "speech as speech," not incidentally. *NIFLA*, 138 S. Ct. at 2374. The Board must thus satisfy First Amendment scrutiny to continue to restrict that speech. It cannot do so.

---

[4] Similarly, the Board might be correct that "[s]peaking on someone's behalf in court" is "pure speech." Answer 26. But that wouldn't invalidate lawyer-licensing laws wholesale, as the Board seems to imply. "A courthouse—and, especially, a courtroom—is a nonpublic forum," *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997), so such restrictions are subject only to reasonableness review. *Cf. Upsolve, Inc. v. James*, 604 F. Supp. 3d 97, 118 (S.D.N.Y. 2022) (enjoining unlicensed-practice-of-law rules as to out-of-court advice, but not as to "appear[ing] in court or fil[ing] documents.").

## B. The Board's restriction isn't narrowly tailored.

The Board hardly argues it can satisfy the First Amendment's requirement of heightened scrutiny—either strict or intermediate scrutiny. *See* Opening Br. 33-34.

The Board's restriction of Plaintiff's site-plan drawings is content-based and therefore subject to strict scrutiny. In the Board's own words, Plaintiffs' drawings are prohibited because of what they "depict": "the location of property lines, fixed works, and the geographical relationship thereto." ER-074; *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (regulation is content-based if it applies because of the "topic discussed" or the speech's "function or purpose"). So while the Board insists that "the Act does not suppress speech based on message," Answer 38, singling out "specific subject matter" makes a restriction content-based, even without "discriminat[ing] among viewpoints within that subject matter," *Reed*, 576 U.S. at 169. Moreover, the Board's own justification for its restriction—that drawings with property lines are dangerous, Answer 32 (quoting ER-011)—confirms that the restriction is content-based because it "cannot be justified without reference to the content of the regulated speech," *Reed*, 576 U.S. at 164 (cleaned up).

Regardless, the Board cannot satisfy even intermediate scrutiny. The Board puts all its tailoring eggs in the rational-basis basket. In a mere one-sentence gesture to intermediate scrutiny (it doesn't bother with strict scrutiny), the Board says that the "same considerations" it cites in favor of rational-basis review also "support a

holding that the law satisfies intermediate scrutiny." Answer 39. Those "considerations" come nowhere close to that "'heavy'" burden.[5] *Italian Colors Rest. v. Beccera*, 878 F.3d 1165, 1176 (9th Cir. 2018); *see* Opening Br. 33-37.

1.      The Board posits that requiring Plaintiffs to obtain a land-surveying license before they may copy information from publicly available data and reproduce it in the form of an electronic drawing furthers two interests. The first is "ensuring that building permits are not issued based on incorrect property lines." Answer 32 (quoting ER-011). That is a laudable goal, but three facts independently torpedo the idea that this is a narrowly tailored means of furthering it.

First, some of Plaintiffs' site-plan drawings are used for reasons unrelated to building permits. ER-072-73, ER-103-04. Yet the Board prohibits Plaintiffs from depicting "property lines, fixed works, and the geographical relationship thereto" no matter the use—building-permit-related or not. *See also* ER-057 (district court recognized that Plaintiffs cannot draw and "distribute 'site plans for permits' *or other* uses." (emphasis added)).[6]

---

[5] As reiterated below (Part V), they do not even satisfy rational-basis review under the Rule 12(b)(6) standard.

[6] The Board explains it can't think of a "reason" why drawings used for non-building-permit purposes need to show "measurements," and therefore Plaintiffs may draw site plans for these other purposes if they don't include measurements. Answer 54 n.11. If "measurements" make all the difference, that is still a content-based distinction. Regardless, "the speaker and the audience, not the government,"

18

Second, Plaintiffs' drawings are used for building-permit applications only when building departments accept site plans from non-surveyors. ER-070, ER-101. These building departments are in the best position to know the level of expertise they require to make their local land-use decisions. And the Board's interest in requiring local governments to use only site plans by licensed surveyors is undercut by the state building code's explicit allowance for building officials to "waive or modify" site-plan requirements. Cal. Building Code ch. 1, div. 2 § 107.2.6 (2022).

Third, non-surveyors across California have created substantively identical site plans, depicting the same information and using the same method Plaintiffs use, for building-permit approval for years. ER-067-72, ER-080-83, ER-096-104. Their local governments give them explicit instructions for how to do so. ER-080-83. Yet the Board cannot point to a single example of "harm or safety concerns" ever caused by either Plaintiffs' drawings or any other site plans created by non-surveyors. *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 860 (9th Cir. 2004). This "void in the record belies" the Board's claim that these drawings "contribute to the harm alleged." *Id.*[7]

---

get to determine "the value of the information presented." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993).

[7] Amici Land Surveyor Trade Organizations' attempt to fill the gap left by the Board with vague anecdotes also fails. *See* Amici Trade Organizations' Br. 14-18. Even if amici's stories were backed up with citations—only one is backed by even a news article, and that was in Florida, not California—it wouldn't move the needle. Amici's tales in no way demonstrate harm from *Plaintiffs'* site plans, nor do they seem to relate to the small-project and informative uses to which Plaintiffs' site

**2.** The Board also claims banning Plaintiffs' drawings furthers its interest in "protecting consumers." Answer 32 (quoting ER-011). The Board's argument is that Plaintiffs wrongly "imply" that their site plans "match the quality and accuracy of those offered by licensed professionals." Answer 35. Again, the Complaint, and the website through which customers purchase Plaintiffs' site plans, prominently states exactly the opposite. ER-070; ER-101-02; p. 9, above. Plaintiffs specifically contrast the characteristics of their drawings with those a licensed person would make. ER-102; p. 9, above. Plaintiffs have never held themselves out as surveyors and the Board has never claimed otherwise. ER-106. And when consumers do request an authoritative drawing, Plaintiffs tell them to "seek a locally licensed" person. ER-071, ER-102.

The Board cannot point to a single example of consumer harm. Nor has the Board "demonstrate[d] that alternative measures that burden substantially less speech" other than a burdensome-to-obtain license—like additional disclaimers on Plaintiffs' website or drawings—"would fail to achieve" its purported interest in protecting consumers. *McCullen v. Coakley*, 573 U.S. 464, 495 (2014).

---

plans are put. And they are obviously not in the preliminary-injunction record, much less can they support a Rule 12(b)(6) dismissal, where the complaint's allegations control. *See, e.g.*, ER-104-05, ER-114 (Defendants possess no evidence that any of Plaintiffs' nearly 50,000 site plan drawings have ever caused harm to anyone).

Plaintiffs have stated an as-applied free-speech claim that is likely to succeed on the merits.

## IV. Plaintiffs have stated an overbreadth and/or vagueness claim that is likely to succeed.

Plaintiffs' overbreadth and vagueness claims are demonstrated by the fact that the Board continues to give California's definition of land surveying a meaning that is distinct from the statutory text. Construed according to its plain text, rather than the Board's unsupported construction, the statute is overbroad because it is "susceptible of regular application to protected expression," *City of Houston v. Hill*, 482 U.S. 451, 467 (1987), as the facts here demonstrate. Moreover, the Board's shifting interpretation shows that the statute is too vague for even the Board to know what it prohibits. Even treating the Board's current interpretation as binding— which it is not—raises additional subjectivity concerns.

### A. Overbreadth.

As explained in Plaintiffs' opening brief, a statute is overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citation omitted); *see* Opening Br. 40. The inquiry has three steps and the Board's argument falters at each one.

1. ***Construe the statute.*** As the opening brief explains, the plain text of California's definition of land surveying sweeps in a vast amount of mapmaking

and information depicting. Opening Br. 41-43. The Board tries to evade the statute's plain text. First, the Board claims the statute is implicated only when there is "a determination of the spatial relationship between property lines *and* fixed objects or works" that "include[s] measurements." *E.g.*, Answer 41-42 & n.6 (emphasis added). That is, the Board says a map is a "survey" only if it shows both property lines *and* fixed objects in relationship to one another. But the statute itself says that a person "practices land surveying" if they do or offer to do "any *one* or more" of several things, Cal. Bus. & Prof. Code § 8726(a) (emphasis added), including showing a "fixed work[]," *id.* § 8726(a)(1), or a "property line," *id.* § 8726(a)(3). So a map is a survey even if it does not show the spatial relationship *between* property lines *and* fixed objects or works.[8] Second, the Board claims that the statute doesn't cover "unmeasured drawings." Answer 41-42. But nothing in the statutory text says that "measurements" are what triggers the statute's coverage.[9] Nor is there any "context," *id.* 41, to support this reading.[10] The Board's unsupported statement

---

[8] Even if the Board's interpretation were right, this is still a content-based restriction on speech. *Cf.* Answer 44 (attempting to distinguish *United States v. Stevens*, 559 U.S. 460 (2010), by arguing that the law at issue in *Stevens* was a content-based restriction on speech).

[9] And, of course, if it were true that "measurements" trigger the regulation, then again the regulation is content-based *and* local building departments are still encouraging violation of the surveyor laws. *See* Opening Br. 6-7.

[10] Context points in the other direction. The Board's reading would render § 8727's limited safe harbor superfluous. Section 8727 provides that drawings which would otherwise be surveys are exempt if they are made by certain non-surveyors

that the statute "does not purport to cover general mapmaking" does not make it so. *Id.* 41-42. The plain text of the statute does indeed cover general mapmaking. And the Board's amici, too, pithily claim that it would be "absurd to read the statute this way," while providing zero explanation for why that is so. Trade Organizations' Br. 25. In short, "the words of the [statute] simply leave no room" for the Board's interpretation. *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987).

      **2.**   ***Legitimate sweep.*** The Board asserts, and Plaintiffs agree, that "maintaining the integrity of property lines" is the legitimate sweep of land-surveyor licensing. *See* Answer 42. The problem is that California's definition of land surveying sweeps in speech that does not implicate that interest. As explained above, it sweeps in pictures that cannot legally determine property lines. Indeed, other subparts of the definition, which Plaintiffs do not challenge, separately cover that legitimate sweep. Section 8726(a)(12), for example, defines land surveying to include determining "the information shown or to be shown within the description

---

"exclusively for geological" or "landscaping purposes" *and* if they "do not involve the determination of any property line." If depicting the location of a property line with "measurement" was necessary to make something a survey, there would be no need to exempt these drawings which already "do not involve the determination of any property line." Cal. Bus. & Prof. Code § 8727; *see Hill v. Kirkwood*, 326 P.2d 599, 602-03 (Cal. App. 1958) ("Otherwise, there is no situation to which the [§ 8727] exemption could apply.") (interpreting prior version of statute).

of any deed … or other title document prepared for the purpose of describing the limit of real property." And § 8726(a)(14) limits to licensed land surveyors the authority to "[r]ender[] a statement regarding the accuracy of maps or measured survey data." These provisions—which do not implicate Plaintiffs—already ensure that activities that could impact "the integrity of property lines" are limited to licensed land surveyors.

**3.    *Balance against impacted speech*.** The First Amendment requires government to "accomplish its purpose 'without imposing an unnecessarily great restriction on speech.'" *Reno v. American Civ. Liberties Union*, 521 U.S. 844, 875 (1997) (citation omitted). Yet in its quest to ensure that the information used to legally, authoritatively determine property lines comes from licensed surveyors, California has swept in virtually all informal, non-legally binding depictions of where buildings, roads, property lines and the like are located. As explained above, those depictions are speech within the meaning of the First Amendment. *See* Part III, above.

The Board's main argument to the contrary seems to be that the overbreadth doctrine applies only to "speech relating to personal opinions or political or charitable activities, not ordinary commercial activities." Answer 44. But *Stevens* invalidated as overbroad a statute explicitly limited to depictions "done 'for commercial gain.'" 559 U.S. at 464-65. Regardless, Section 8726(a) restricts

depictions of location information generally, not just those that are sold or that propose a commercial transaction.

The Board also argues that § 8726(a) is not overbroad because Plaintiffs have not "demonstrate[d] that the Board would ever enforce the law against protected speech." Answer 45. Its enforcement against *Plaintiffs* is an example of enforcement against protected speech. Part III, above. Regardless, no such demonstration is needed. The question is only whether the statute is "*susceptible* of regular application to protected expression." *City of Houston*, 482 U.S. at 467 (emphasis added). A statute cannot be saved "merely because the Government promise[s] to use it responsibly." *Stevens*, 559 U.S. at 480. And "[t]he Constitution does not permit a legislature to 'set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.'" *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999) (quoting *United States v. Reese*, 92 U.S. 214, 221 (1876)).

Whatever interest California has in requiring a license to create and disseminate location information with authoritative, legally binding effect, the statute it is using to do so sweeps in speech that it does "not have a sufficiently strong interest in prohibiting." *Hernandez v. City of Phoenix*, 43 F.4th 966, 981 (9th Cir. 2022). The district court therefore erred in denying a preliminary injunction on Plaintiffs' overbreadth claim and in dismissing it.

## B. Vagueness.

The Board's Answering brief also demonstrates the arbitrary enforcement threat from § 8726(a)'s vagueness. As explained above, though the Board's lawyers seem to have finally settled on one definition—land surveying is showing "measurements [] between property lines and fixed objects," Answer 48—that definition is irreconcilable with the statutory text, which does not require either measurements or a depiction of *both* property lines and fixed works. It also differs from the Citation Order the Board issued to Plaintiffs, which states that surveying consists of "depict[ing] the location of property lines, fixed works, and the geographical relationship thereto." ER-074. That description does not necessarily require measurements, as the Board now claims is required. Answer 48. And it is irreconcilable with what counsel for the Board suggested at the hearing on the Board's motion to dismiss: that Plaintiffs' drawings count because they look like a "fancy map," but the same information in the form of a "rough sketch" would not. ER-037-038.[11]

The Board's claim that this moving target does not reflect any "*substantive difference*" in interpretation, Answer 48, is just wrong. Each position reflects an

---

[11] The Board's Answer confirms that, in its view, the same information Plaintiffs depict on their drawings would not be illegal if it was instead a "rough sketch" by a homeowner on a "blank sheet of paper." Answer 56-57 n.13 (emphasis omitted).

ever-shifting difference in what information a drawing needs to contain to be (or not be) "land surveying." Because homeowners and informal mapmakers "could never be confident that the [Board] would agree" that their drawing is not a survey, *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 513 (9th Cir. 1988), they will simply "steer far wider of the unlawful zone," *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (citation omitted). That violates the vagueness doctrine's goal of "avoid[ing] any chilling effect on the exercise of First Amendment freedoms." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998).

Even if the Board's interpretation in this appeal is its final one, that position still foreshadows subjective and arbitrary enforcement. *See id.* The Board repeatedly contends that Plaintiffs' drawings are surveys because they show "precise" measurements or dimensions. *E.g.*, Answer 1, 6, 23, 35, 54 n.11. But how "precise" do measurements need to be to count? Do the site-plan exemplars for non-surveyors provided by local building departments count? *See* Opening Br. 6-8. The Board still doesn't say. This new position then, too, "subjects violators to criminal penalties" based on "subjective terms." Answer 50 (attempting to distinguish *McCormack v. Herzog*, 788 F.3d 1017, 1031 (9th Cir. 2015)).

Because the Board's ever-changing definition of land surveying "leaves the public uncertain as to the conduct it prohibits," *Morales*, 527 U.S. at 56 (citation

omitted), Plaintiffs stated a claim that this definition is unconstitutionally vague that is likely to succeed on the merits.

*    *    *

At the end of the day, the Board cannot answer, in any manner that comports with the statutory scheme, much less the Constitution, why Plaintiffs' drawings are regulated but the same drawings, done by other non-surveyors such as property owners and contractors, including the same "measurements" between property lines and structures, and often at the direction of local building departments for permits, *are not* regulated. That is a vagueness problem. And if all those other drawings *are* regulated, that demonstrates the overbreadth problem. Regardless, the fact that thousands of non-surveyors, including Plaintiffs, do and have done substantively identical drawings for many years without incident demonstrates there is no sufficient government interest in restricting such drawings.

## V.    Plaintiffs have stated a due process claim and/or an equal protection claim.

The same basic facts that the Board fails to address with regard to Plaintiffs' free speech, overbreadth, and vagueness claims—that site plans are non-authoritative and thousands of non-surveyors do and have done substantively identical drawings for many years at the direction of local building departments without incident or regulation—demonstrate that Plaintiffs have stated rational-basis claims too. Whatever might be said of the Board's interest in requiring a

license for land surveying *generally*, it has no interest in regulating Plaintiffs' non-authoritative drawings. That much is demonstrated by the thousands of identical drawings Plaintiffs and other Californians have made over many years without incident. That plausibly states a due process claim. And whatever interest the Board might have in requiring a license for Plaintiffs' site plan drawings is fatally undermined by the fact that the Board does not require a license for other people to draw site plans depicting identical information. That plausibly states an equal protection claim.

### A. Plaintiffs have stated a due process claim.

The Board mistakes Plaintiffs' as-applied due process claim for a facial one. *E.g.*, Answer 50-51. But "Plaintiffs do not challenge California's authority to impose a surveyor license requirement generally." Opening Br. 57. The question is thus not whether California has a sufficient interest in requiring a license for land surveying (and how heavy the burden is to obtain a land-surveying license) generally. Rather, the question is whether there is a sufficiently rational basis to require the license for *these Plaintiffs'* particular activity. *Merrifield v. Lockyer*, 547 F.3d 978, 986-92 (9th Cir. 2008); *see St. Joseph Abbey v. Castille*, 712 F.3d 215, 225 (5th Cir. 2013) (in as-applied challenge by plaintiffs who wanted *only* to sell caskets, finding a "disconnect" between state law "restricting casket sales to [licensed] funeral homes" and the state's interest in "preventing consumer fraud and

abuse"); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1108-19 (S.D. Cal. 1999) (acknowledging that California may license cosmetology generally, but holding that California lacked a rational basis to define Cornwell's "limited range of activities" as "cosmetology" requiring a license).

Properly framed, and as the opening brief makes clear, the Complaint's allegations state a claim that there is no rational basis for the Board to require a land-surveying license for Plaintiffs' limited range of activities. *See* Opening Br. 53-55. The Board's responses are meritless—especially at the 12(b)(6) stage.

The Board and the district court believed the fact that "local government agencies routinely accept these site maps for purposes of issuing permits" meant there was a rational basis for requiring a surveyor license. Answer 53-54 (citing ER-019).[12] This fact does not undercut Plaintiffs' argument because the local agencies—consistent with state law, Cal. Building Code ch. 1, div. 2 § 107.2.6 (2022)—have determined that non-surveyors *can* submit site plans. ER-097-101. Contra the Board, this "contention about the Building Code" is not an argument that Plaintiffs "did not violate" the land-surveying statute. Answer 55-56. Rather, it

---

[12] The district court said this was a reason to restrict "distribution" of Plaintiffs' drawings, but the challenged restriction does not turn on "distribution" as nothing in Section 8726(a) refers to "distribution." As the Board's own citation makes clear, merely "depict[ing]" the "location of property lines, fixed works, and the geographical relationship thereto" is what the Board prohibits. ER-105.

undercuts the Board's *rationale* for requiring a license for Plaintiffs' drawings. The Board says it must regulate all drawings that depict property lines or fixed works because it "may" otherwise result in permits issued for "the construction of fixed improvements that encroach on required setbacks[] or even on the property line itself." Answer 34. But this hypothetical claim is undermined by the fact that local California building departments *regularly* accept non-surveyor site plans and *regularly* issue certain permits (for smaller projects) without needing a licensed surveyor's sign-off. Opening Br. 4-8; ER-097-101. And that these local building departments have done so for years without harm demonstrates that Plaintiffs' drawings are so different from what surveyors do (create authoritative land information) that the interest in regulating surveyors (ensuring accurate authoritative-location survey products) is not implicated. Opening Br. 52-57. In short, actual practice "sheds much light on the disconnect between" the Board's interest "and the grant of an exclusive right" to licensed surveyors to copy location information from publicly available sources. *St. Joseph Abbey*, 712 F.3d at 226.

Moreover, the Board's argument also ignores that Plaintiffs' drawings are used for many purposes entirely unrelated to permitting, yet the Board still prohibits Plaintiffs from drawing site plans for these "other uses." ER-057, ER-103-04. The Board's argument that it "did not order the closure of MySitePlan's entire business" is meaningless given that it has prohibited Plaintiffs from any drawing showing

"measurements" even if not used for permitting purposes. ER-057. *Compare* ER-103-04, *with* Answer 54 n.11.

Further, and ignoring Rule 12(b)(6)'s requirements once again, the Board urges the Court to ignore the Complaint's allegations on this score and instead look at Plaintiffs' "website," which, it contends, "advertises [] site plans for permitting and land use purposes" and not for uses like "farmers' markets, events, or apartment building maps." Answer 54 n.11. But the very portions of Plaintiffs' website the Board cites advertise uses like "event planning," Supplemental Excerpts of Record ("SER") 124, "conceptual layouts for proposed hotels [and] apartment buildings," SER-126, and "[r]eal [e]state [m]arketing," SER-127.

Given this "disconnect," requiring Plaintiffs to get "six years of specific education and experience (gained under a licensed surveyor) and pass[] multiple exams" to continue making their non-authoritative drawings is—at least plausibly—unduly burdensome. *See* Opening Br. 55 (citing ER-109-110, ER-119). Plaintiffs have plausibly alleged that their activities are sufficiently different from the activities implicating the Board's interest in licensing land surveyors. Opening Br. 52-57. Dismissal of their due process claim was error.

### B. Plaintiffs have stated an equal protection claim.

As for equal protection, the Board argues against a class-of-one claim that Plaintiffs neither pleaded in their Complaint nor argue for now. Plaintiffs' equal

protection claim has always been, not that Plaintiffs have been wrongly *singled* out for enforcement, but that the same information depicted on Plaintiffs' drawings is *not illegal* when depicted by other non-surveyors, such as homeowners and contractors. Opening Br. 58-59; ER-119-120. When a regulatory requirement applies with full force to one class of persons but not to others who also implicate the purported interest, it violates equal protection. *Olson v. California*, 62 F.4th 1206, 1219 (9th Cir. 2023); *Fowler Packing Co. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016); *Merrifield*, 547 F.3d at 991-92.

At the district court's hearing on the Board's motion to dismiss, the Board seemed to confirm that Plaintiffs' drawings are regulated but homeowners' are not. Opening Br. 59; ER-038. Now, in a footnote, the Board says Plaintiffs' understanding is "patently untrue." Answer 56-57 n.13. But the Board's explanation confirms again that Plaintiffs' drawings are illegal while other drawings implicating the same interest are not. As the Board says, depicting the same information Plaintiffs' drawings depict would not be illegal if (1) sketched by a homeowner on a blank sheet of paper, and (2) not "advertised" as a "substitute for [a] land survey[]." *Id.*

The first of those distinctions is not rationally related to the Board's purported interest. The Board says its interest is in "ensuring that building permits are not issued based on incorrect property lines." Answer 32 (quoting ER-011). It says it

fears that not regulating drawings depicting location information "may" lead to "the construction of fixed improvements that encroach on required setbacks [] or even on the property line itself." Answer 34 (quoting SER-298, SER-319, SER-334). If that is the case, it does not matter whether the person depicting that information is MySitePlan.com or a homeowner, or whether they use a blank sheet of paper. All that matters is that a non-surveyor did the site plan. This "exclusion of thousands" who fully implicate the Board's "stated purpose" plausibly violates equal protection. *Olson*, 62 F.4th at 1219.

The Board's second purported justification is (again) directly contrary to the facts as pled in the Complaint (and as exist in real life). "MySitePlan.com is headed by a disclaimer reading 'THIS IS NOT A LEGAL SURVEY, NOR IS IT INTENDED TO BE OR REPLACE ONE.'" ER-101. Moreover, Plaintiffs have numerous disclaimers that they are not surveyors and their site plans are not surveys, not a replacement for surveys, cannot be used as surveys, and do not have the same accuracy as surveys. ER-101-02.

In short, at the 12(b)(6) stage, there is not a rational distinction between Plaintiffs and the thousands of other non-surveyors who do identical drawings. Dismissal of Plaintiffs' equal protection claim was error.

## VI.    The equities favor Plaintiffs.

Plaintiffs agree with the Board that likelihood of success is the most important preliminary-injunction factor. Answer 59; *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). As shown in the opening brief and above, Plaintiffs are likely to succeed on their speech claims here.

But the Board is wrong that the equitable factors tip in its favor. It claims Plaintiffs' "evidence of irreparable harm" was "limited to bare assertions" that California comprises nearly one-fifth of MySitePlan's business. Answer 60. And it says Plaintiffs' testimony that the Board was causing Plaintiffs to rapidly lose unquantifiable goodwill with its repeat customers is "speculative." *Id.* 60 n.16.[13] But the irreparable loss of nearly one-fifth of income is a significant harm. ER-062. And the Board still ignores the elephant in the room: "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably

---

[13] The Board also says it "submitted evidence" that Plaintiffs should not need to include "distance[s]" for many of their drawings' uses. Answer 60-61 (citing SER-301). Again, it's far from clear that removing "distance[s]" from the drawings would make them legal under the statute; if it would, it confirms that the Board's regulations are content-based. Moreover, the Board chides personal-knowledge testimony from MySitePlan.com's founder about the company's finances and customer base as "unsupported" and "speculative," but claims a Board employee's guess about the needs of customers he has never spoken with is "evidence." Answer 60 & n.16. This is wrong. Fed. R. Evid. 602 (A witness may testify only based on "personal knowledge of the matter.")

constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009).

The Board is also wrong about the balance of hardships. It argues that "enjoining the law would prevent the state from conducting meaningful oversight" of what it classifies as "unlicensed land surveying." Answer 61 (quoting ER-063). But as the opening brief (at 63) makes clear, the Board has sat idle as thousands of lay people have, for years, created site plans just like Plaintiffs', and the Board cannot muster a single instance of harm flowing from those drawings. And, at bottom, neither the Board nor the public has any interest in enforcing a law that violates the constitution. *American Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc).

## CONCLUSION

For these reasons, this Court should REVERSE the dismissal of each cause

of action, ORDER the entry of a preliminary injunction, and REMAND for further

proceedings.

Dated: August 2, 2023.                    Respectfully Submitted,


                                          /s/ Paul V. Avelar
S. Michael Kernan                         Paul V. Avelar
THE KERNAN LAW FIRM, APC                  INSTITUTE FOR JUSTICE
9663 Santa Monica Blvd., Suite 450        398 S. Mill Ave., Suite 301
Beverly Hills, CA 90210                   Tempe, AZ 85281
(310) 490-9777                            (480) 557-8300
MKernan@kernanlaw.net                     pavelar@ij.org

                                          Michael Greenberg
                                          INSTITUTE FOR JUSTICE
                                          901 N. Glebe Rd., Suite 901
                                          Arlington, VA 22203
                                          (703) 682-9320
                                          mgreenberg@ij.org


*Counsel for Plaintiffs-Appellants*

**FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS**
**9TH CIR. CASE NUMBER 23-15138**

I am the attorney or self-represented party.

**This brief contains 8,389 words,** including 0 words manually counted in

any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The

brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[] complies with the word limit of Cir. R. 32-1.

[] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
    Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[X] complies with the longer length limit permitted by Cir. R. 32-2(b) because
    *(select only one)*:
    [] it is a joint brief submitted by separately represented parties;
    [X] a party or parties are filing a single brief in response to multiple briefs;
    or
    [] a party or parties are filing a single brief in response to a longer joint brief.

[] complies with the length limit designated by court order dated _____.

[] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Dated: August 2, 2023

/s/ Paul V. Avelar
Paul V. Avelar
*Counsel for Plaintiffs-Appellants*