FILED

APR 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RYAN CROWNHOLM; CROWN CAPITAL ADVENTURES, INC., DBA mysiteplan.com, a Delaware corporation, registered as a foreign corporation in California,

Plaintiffs-Appellants,

v.

RICHARD B. MOORE, in his Official Capacity as Executive Officer of the California Board for Professional Engineers, Land Surveyors, and Geologists; et al.,

Defendants-Appellees.

No. 23-15138

D.C. No.
2:22-cv-01720-DAD-CKD

AMENDED MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted December 14, 2023
San Francisco, California

Before: KOH, H.A. THOMAS, and DESAI, Circuit Judges.

In 2021, Plaintiffs Ryan Crownholm and Crown Capital Adventures, Inc. (collectively, "Plaintiffs"), were cited by the California Board for Professional

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Engineers, Land Surveyors, and Geologists ("the Board") for practicing land surveying without a license. The Board issued its citation order because Plaintiffs produce and sell site plans on their website, MySitePlan.com, to customers in California. Plaintiffs filed suit under 42 U.S.C. § 1983, raising constitutional challenges to the California Professional Land Surveyors' Act ("the Act"), Cal. Bus. & Prof. Code § 8700 *et seq*. The district court denied Plaintiffs' motion for a preliminary injunction and subsequently granted Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The denial of a motion for a preliminary injunction is reviewed for abuse of discretion, but the underlying legal decisions are reviewed *de novo*. *Washington v. U.S. Dep't of State*, 996 F.3d 552, 560 (9th Cir. 2021). We review a district court's grant of a motion to dismiss *de novo*. *Am. Soc'y of Journalists & Authors, Inc. v. Bonta* (*ASJA*), 15 F.4th 954, 960 (9th Cir. 2021).

1. Plaintiffs first argue that the Act is unconstitutional as applied to them. In assessing this challenge, we must first determine whether Plaintiffs have been regulated based on their speech or based on their conduct. *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 46–47 (2017); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) (even if a law generally regulates conduct, the key question is whether "the conduct triggering coverage

under the statute consists of communicating a message"). We conclude that Plaintiffs have been regulated based on their conduct.

As the Supreme Court has long held, "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949); *see also, e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) ("[T]he State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity."); *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986) ("[E]very civil and criminal remedy imposes some conceivable burden on First Amendment protected activities."); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra* (*NIFLA*), 585 U.S. 755, 768 (2018) ("[U]nder our precedents, States may regulate professional conduct, even though that conduct incidentally involves speech." (citing *Ohralik*, 436 U.S. at 456)).

Indeed, the Ninth Circuit has held that practicing psychoanalysis and performing conversion therapy are conduct, not speech, even though both require the use of spoken words. *See Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psych.* (*NAAP*), 228 F.3d 1043, 1054 (9th Cir. 2000) ("[T]he key component of psychoanalysis is the treatment of emotional suffering and

depression, *not* speech."); *Pickup v. Brown*, 740 F.3d 1208, 1229 (9th Cir. 2014) (finding that conversion therapy ban regulated conduct), *abrogated in part by NIFLA*, 585 U.S. at 767; *Tingley v. Ferguson*, 47 F.4th 1055, 1077–78 (9th Cir. 2022) (relying on *Pickup* to conclude "identical" conversion therapy ban also regulated conduct), *cert. denied*, 144 S. Ct. 33 (2023).

By the same token, the fact that Plaintiffs' site plans convey information through language and graphics does not *ipso facto* subject the Act to First Amendment scrutiny. Rather, as they describe, Plaintiffs assess their clients' needs, access Geographic Information System ("GIS") information and "other publicly available imagery," and use a computer-aided design program to electronically draft site plans. These site plans are (again in Plaintiffs' words) "by definition, . . . drawing[s] that provide[] a visual image of property by depicting property boundaries, structures, and measurements." By citing Plaintiffs, the Board has simply penalized unlicensed land surveying conduct. *See NAAP*, 228 F.3d at 1054; *see also Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1225–26 (11th Cir. 2022) ("Assessing a client's nutrition needs, conducting nutrition research, developing a nutrition care system, and integrating information from a nutrition assessment are not speech. They are 'occupational conduct'; they're what a dietician or nutritionist does as part of her professional services."), *cert. denied sub nom. Del Castillo v. Ladapo*, 143 S. Ct. 486 (2022).

Moreover, the Act is content neutral: its application is not limited to site plans depicting only certain types of properties, such as wedding venues or mid-century modern homes, and nothing in the Act's "text, structure, or purpose reflects a legislative content preference." *ASJA*, 15 F.4th at 963; *cf. NAAP*, 228 F.3d at 1055 ("California's mental health licensing laws are content-neutral; they do not dictate what can be said between psychologists and patients during treatment."). The Act also in no way prohibits Plaintiffs from engaging in public discourse or "advocat[ing] for a position," including for a change in the law. *Tingley*, 47 F.4th at 1073.

Even to the extent Plaintiffs' activity has some expressive component, the Act's effect on this component is merely incidental to its primary effect of regulating Plaintiffs' unlicensed land surveying activities. *See Pickup*, 740 F.3d at 1229–31; *cf. Cap. Associated Indus., Inc. v. Stein*, 922 F.3d 198, 208 (4th Cir. 2019) ("Licensing laws inevitably have some effect on the speech of those who are not (or cannot be) licensed. But that effect is merely incidental to the primary objective of regulating the conduct of the profession."); *Del Castillo*, 26 F.4th at 1226. In short, just as the state may constitutionally ban a particular medical treatment that requires the use of speech, *see Tingley*, 47 F.4th at 1073, so too may the state bar unlicensed persons from creating maps that have the effect of providing a "professional opinion as to the spatial relationship between fixed

works or natural objects and the property line."[1]

We thus conclude that the Act regulates Plaintiffs' conduct and imposes only incidental burdens on their speech. *See Expressions Hair Design*, 581 U.S. at 47 (noting that if a law required sandwiches to be sold at a certain price, and that price was reflected on a menu, "[t]hose written or oral communications would be speech, and the law — by determining the amount charged — would indirectly dictate the content of that speech[, b]ut the law's effect on speech would be only incidental to its primary effect on conduct"). As such, the Act is subject to rational basis review and will be upheld if it is "rationally-related to a legitimate governmental interest." *ASJA*, 15 F.4th at 964 (quoting *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002)); *accord Pickup*, 740 F.3d at 1231 (applying rational basis review). The state carries a "light burden" under this standard, *Tingley*, 47 F.4th at 1077 (citation omitted), and Plaintiffs have not

---

[1] *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), is distinguishable. Notably, the statute at issue in *Sorrell* imposed both content- and speaker-based burdens on speech. *See id.* at 563–65. Indeed, the presence of these forms of discrimination made it possible for the Supreme Court to resolve the case "even assuming . . . that prescriber-identifying information is a mere commodity" rather than speech. *Id.* at 571. No such discrimination is present here. *IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020), is distinguishable for the same reason. *See id.* at 1120 (finding challenged statute "restrict[ed] speech because of its content" and "restrict[ed] only a single category of speakers").

plausibly shown that the Act cannot meet it.[2]

The district court correctly found that California's interests in "safeguard[ing] property and public welfare," Cal. Bus. & Prof. Code § 8708, are well served by preventing "incompetent people and entities [from] disseminating land surveying products" that could be used for, among other things, applying for building permits. MySitePlan.com clearly advertises that Plaintiffs' site plans are "[w]idely accepted by building departments and HOA's for residential permitting purposes"; that the plans "meet or exceed requirements"; and that they are "GREAT FOR . . . Demolition permits . . . Conditional Use Permits . . . Construction Permits . . . Sign Permits . . . Residential and Commercial Site Plans . . . [and] Tree Removal Permits."

Plaintiffs' "most popular" site plan specifically shows eight precise measurements to property boundaries and the boundaries themselves, with no disclaimer as to the plan's accuracy, and the exemplar is intended to be used for

---

[2] We note briefly that the Ninth Circuit has stated, in at least one case, that "[i]f legislation regulates conduct but incidentally burdens expression, we review that legislation under 'intermediate scrutiny.'" *Pac. Coast Horseshoeing Sch. v. Kirchmeyer* (*PCHS*), 961 F.3d 1062, 1068 (9th Cir. 2020); *cf. NAAP*, 228 F.3d at 1055–56 (not clearly stating what standard it was applying). Given that this statement from *PCHS* was ultimately unnecessary to the panel's holding and thus is dicta (as Plaintiffs conceded at oral argument), it is not binding on us. *See United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) ("[W]e are not bound by a prior panel's comments . . . done as a prelude to another legal issue that commands the panel's full attention." (cleaned up)).

"[pl]anning for [a] propane tank." Even where Plaintiffs' site plans could initially be obtained for ostensibly benign purposes (like planning a farmers' market), the Board notes that once they are created, the site plans "can be improperly used, even years later, to support a permitting or planning decision, or to settle a property line dispute between neighbors." Finally, the fact that local permitting departments may accept Plaintiffs' site plans is immaterial. The Act is aimed at what Plaintiffs may *produce*, not what consumers or departments *accept*, and in any event, local departments do not have the legal right to allow the unlicensed practice of land surveying.

On this record, the Act as applied to Plaintiffs is rationally related to California's legitimate governmental interests. Plaintiffs' as-applied challenge was thus properly dismissed.

2. Next, Plaintiffs argue that the Act is facially unconstitutional because it is impermissibly vague. The veracity of this claim is undermined by the fact that Plaintiffs conceded at oral argument that their site plans are subject to regulation under the Act. *See Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1047 (9th Cir. 2017) ("Because Petitioner has engaged in conduct that is clearly covered, he 'cannot complain of the vagueness of the law as applied to the conduct of others.'" (quoting *Holder*, 561 U.S. at 19)). Regardless, we conclude that the Act is "sufficiently clear so as to allow persons of 'ordinary intelligence a reasonable

opportunity to know what is prohibited.'" *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Although the Act's language is not crystal clear, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."[3] *Edge v. City of Everett*, 929 F.3d 657, 664 (9th Cir. 2019) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Plaintiffs' argument that the Act relies on a subjective standard (namely, whether a given site map is "too fancy") is unsupported by the Act's text, and nothing in the record or the complaint indicates that the Act has ever been enforced in such a selective or arbitrary manner. *E.g.*, *Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971) (finding unconstitutional ordinance that barred "annoying" conduct).

3. Plaintiffs also raise a facial overbreadth challenge to the Act under the First Amendment, arguing that the Act requires a land surveyor's license to create a map "show[ing] farmers' market vendors where to set up shop . . . or even for simple artwork depicting the location of a house." Beyond providing no evidence that the Act has actually been enforced so broadly, Plaintiffs' "string of hypotheticals" depends on an expansive and unsupported reading of the Act. *United States v. Hansen*, 599 U.S. 762, 782 (2023). Even granting that the Act is

---

[3] Regardless, the Act clearly does not purport to allow unlicensed persons to avoid being cited simply by disclaiming the accuracy of their site plans.

worded broadly, it plainly only covers maps produced "as an integral step in designing and locating specific projects," not any and all "map making in the abstract." 23 Ops. Cal. Atty. Gen. 86, 90 (1954); *see* Cal. Bus. & Prof. Code § 8726(a)(7) (barring unlicensed persons from "[d]etermin[ing] the information shown or to be shown on any map or document prepared or furnished *in connection with any one or more of the [land surveying] functions*" described in the preceding six subparagraphs (emphasis added)). Thus, "[e]ven assuming that [the Act] reaches some protected speech, and even assuming that its application to all of that speech is unconstitutional," Plaintiffs have not plausibly shown that "the ratio of unlawful-to-lawful applications is . . . lopsided enough to justify the 'strong medicine' of facial invalidation for overbreadth." *Hansen*, 599 U.S. at 784 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

4. Plaintiffs sought a preliminary injunction only with respect to their First Amendment challenges. Because we conclude that none of these challenges are stated plausibly, we necessarily find that none of these challenges are "likely to succeed on the merits." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As such, we affirm the district court's denial of Plaintiffs' motion for a preliminary injunction.

5. Plaintiffs' challenge under the Fourteenth Amendment's Due Process Clause is also meritless. Although the Due Process Clause "includes some

generalized due process right to choose one's field of private employment," that right is "nevertheless subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999). Where a regulation acts as a "complete barrier to entry into [a] profession," it is subject to rational basis review. *Dittman v. California*, 191 F.3d 1020, 1029–30 (9th Cir. 1999); *see Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2009). Even assuming the Act operates to bar Plaintiffs from engaging in land surveying in California, the Act survives rational basis review for the reasons stated above.

6. Plaintiffs also challenge the Act under the Fourteenth Amendment's Equal Protection Clause. They essentially argue that they have been irrationally classified as producing "fancy" maps that are subject to regulation under the Act, despite the fact that their site plans contain the same information included in other "rough" maps "created by homeowners and contractors" that are not barred. Yet the Act makes no such distinction on its face, and Plaintiffs provide no evidence that the Act is actually enforced on the basis of whether a map is "too fancy,"[4] or that the Board would decline to investigate and cite similar maps created by others. *See also* Cal. Bus. & Prof. Code § 8790 (charging the Board with investigating and

---

[4] Plaintiffs' emphasis on "fancy" maps appears to come from a comment made by Defendants' counsel at the preliminary injunction hearing. Read in context, however, Defendants' counsel simply used this word to indicate that Plaintiffs' site plans are sufficiently detailed that they are functionally indistinguishable from those produced by licensed land surveyors.

prosecuting violations of the Act "coming to its notice"). To the extent Plaintiffs allege that there are other site plans that "similarly violated [the Act], were reported to the Board, and despite that, [D]efendants chose only to investigate and cite [P]laintiffs," the Opening Brief disclaims that Plaintiffs are making this argument.

7. Finally, the district court correctly declined to abstain under *Younger v. Harris*, 401 U.S. 37 (1971). Plaintiffs did not administratively appeal their citation order, and the mere fact that they *could* have done so and raised their constitutional challenges in the process does not mean there are any "ongoing state proceedings" for the purposes of *Younger* abstention. *See Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 885 (9th Cir. 2011) ("Where a federal plaintiff seeks relief not from past state actions but merely from prospective enforcement of state law, federal court adjudication would not interfere with the state's basic executive functions in a way *Younger* disapproves."); *Duke v. Gastelo*, 64 F.4th 1088, 1096 (9th Cir. 2023) (criticizing as unsupported the argument that *Younger* requires a court to "look at all state-court proceedings — past, present, and future — afforded to the plaintiff" and abstain under *Younger* "if that plaintiff had or will have *any* chance to raise constitutional challenges in a state forum").[5]

---

[5] Defendants request judicial notice of (a) the fact that Plaintiffs were cited a second time by the Board in October 2023, and (b) the fact that Plaintiffs have

**AFFIRMED.**[6]

administratively appealed that second citation order. ECF Nos. 46, 52. Plaintiffs do not oppose either request. We grant the requests, but we note that the information contained therein has no bearing on the disposition of this case or, specifically, on the *Younger* abstention issue. *See Cook v. Harding*, 879 F.3d 1035, 1041 (9th Cir. 2018) ("We may not consider events after the filing of the complaint for purposes of our *Younger* analysis.").

[6] Plaintiffs' motion to expedite, ECF No. 26, is denied as moot.